As a case of insurance contract interpretation, this appeal can be resolved by juxtaposing expectation with reality. If it pleases the court, a few visual aids will assist us in going through the policy language that actually was issued to Mr. Bauer and what the insurance company now claims that policy says. Obviously, the juxtaposition in this case of expectations versus reality is ever important because the standard is the reasonable expectation of the insurant. On appeal, the insurers argue that the epidemic exclusions requirement that COVID-19 be recognized as an epidemic by the World Health Organization is met when a single employee of that organization merely refers to the disease as an epidemic with multiple foci at a single press conference. From this argument, one might expect the policy to have required only that the disease be referred to as an epidemic by a representative of the WHO. But in reality, however, the policy omits any or referred to language and requires that the organization itself, not a single employee, recognize or formally acknowledge the disease, quote, as an epidemic. There are two distinct points on the next slide or the next visual. First, bearing on the issue of causation, the insurers argue that Mr. Bauer's loss resulted directly or indirectly from COVID-19 because the quarantine orders were issued to control the spread of that disease. From this argument, one could reasonably expect the policy to have read simply, coverage is excluded for all losses directly or indirectly resulting from an epidemic period. The problem is, in reality, the insurance policy doesn't read like that at all. Instead, it contains the additional requirement that the contagious disease actually affect Mr. Bauer. The inclusion of this additional requirement in the policy tells a reasonable insurer that coverage will not be excluded unless the disease itself actually affects him and his approximate cause of loss. How would an indirect effect be of a disease under your interpretation? Isn't the term directly or indirectly is in the policy, is it not? It is. So how would one be indirectly affected by COVID-19? So I think that there's a couple of different ways. Number one, it can affect you, a traveling companion or a family member. And so it could be referenced to that. Now, bear in mind that the language that's actually contained in the policy is indirectly or indirectly refers to about, I don't know, 20 numbered exclusions. The reality is, I don't know that the way that the insurance company drafted the exclusion process or the introduction language is in any way helpful to them at all. I don't know that it does necessarily apply. I don't know that you can both indirectly be affected by COVID and also a requirement that it affect you. But the reality is they drafted the language and it must be construed against them. Counsel, isn't the real key here the interplay between the concurrent proximate cause rule and the language of the policy? Absolutely, it is. A hundred percent, Your Honor. I entirely agree with you. The reality is that the concurrent proximate cause rule is in fact adopted, in my opinion, into the language of the policy. When you read the actual policy where it says that the loss must result directly or indirectly and it must actually affect you, I believe, Your Honor, that that is an incorporation of concurrent proximate cause. So what standard does this Court use to assess whether two causes are independent and distinct for purposes of that rule? Well, so I don't know the actual rule. Because what we have here is we have a pandemic and then we have a reaction to the pandemic. How do we assess what is distinct, truly distinct and independent for purposes of applying the rule? Well, Your Honor, I think that you don't have to. And the reason is because of the case of Messina v. Shelter Insurance Company from 2019 from the Western District of Missouri, where they held that where an insured risk and an excluded risk are both concurrent proximate causes, coverage is provided and the insurer is liable. So ultimately, do you have to determine which one is more closely related? The answer is no under Missouri law. However, even if you did, at the motion to dismiss stage, Your Honor, you must give deference to the allegations of Mr. Bauer. And Mr. Bauer alleges that it is the mandatory confinement, not the disease itself, that caused the loss or caused the cancellation of his trip. So under Missouri law, I don't think you have to make that decision. But even if you did, you would defer, Your Honor, to the allegations of Mr. Bauer at the 12B6 stage. Second, with respect to this particular visual aid, is the pandemic versus epidemic distinction. From the insurer's arguments that they make in this case, one might expect that recognition of a pandemic is sufficient under the policy to trigger the epidemic exclusion. In reality, however, as we saw previously, the disease must be itself recognized as an epidemic. And one might expect for a policy that the insurers now claim to include pandemics for the insurance policy to address a pandemic or to define a pandemic or to even use the word pandemic. The reality is this insurance policy does no such thing. And that absence is very telling. Absent formal acknowledgement of the disease as an epidemic, the epidemic exclusion contained in Mr. Bauer's policy simply cannot apply. The insurers tell you that the plain language of the epidemic exclusion issued to Mr. Bauer was clear enough that his reasonable expectation should have been that no coverage was provided. But in reality, the insurers know that this is not true and that the language was not sufficient. Because all of the language that I've just shown you as what you would expect the policy to have read that was issued to Mr. Bauer is now language that they've amended and put into the policies. If they truly believe that the policy as drafted and issued to Mr. Bauer was sufficient to cover COVID-19 and the pandemic that ensued, they absolutely would not have had the need to amend the policy. Well, that's not necessarily fair. I mean, they're being sued and we haven't issued a judgment yet. So as better part of caution, I don't think it's an acknowledgement that the prior. I don't think your your friend here would acknowledge that the changing the policy is an acknowledgement that he loses this case. So I don't think it's an acknowledgement that loses this case, Your Honor, Judge Kobus. I actually believe that what it is is an acknowledgement that what the position that they're telling you the policy already says is not what the policy already says. When they tell you that the district court interpreted the policy correctly and that merely referring to COVID-19 is sufficient or that the fact that we didn't have the word pandemic or use the word pandemic is sufficient because epidemic and pandemic are the same. Even though we chose the language of the definition, the reality is they can't actually believe it. I'm not saying I'm not saying they would acknowledge the district court got it wrong. I'm not saying they would acknowledge the policy is necessarily insufficient. But I think it should bear upon the credibility of the argument that they're making that the policy that is issued to Mr. Bauer is in fact sufficient when they know that it is. I'm having a hard time understanding why this wouldn't be subject to judicial notice. The issue that we that there was a pandemic. So the pandemic, even if you find that there was a pandemic. So the reality is that that's not triggered under the policy. That does not trigger the epidemic exclusion. So the only thing that the district court could have taken judicial notice of, to the extent that it was proper to do so, would have been that the World Health Organization, the director general, found that there was a pandemic or made an assessment of a pandemic. But that's not sufficient under the policy to trigger the exclusion. They got to choose the definition. They said the World Health Organization must recognize the disease both as an epidemic. And that did not occur. The district court erred in failing to strictly construe, strictly construe the epidemic exclusion in the policy issued to Mr. Bauer against the insurers and in favor of coverage. And its judgment should be reversed. Unless there's questions, I'll reserve what little of my time remains. What's the difference between a pandemic and an epidemic? Very, very, very good question, Judge Collison. The reality is, I don't know. We were not entitled to discovery on that issue. I'm just talking about plain meaning, dictionary. So I don't think that the plain dictionary meaning actually would apply in this particular situation because the insurers elected to essentially allow the World Health Organization and the CDC, who are experts in the field, to be the arbiter of what is and is not an epidemic. So I think that reference to the standard, you know, sort of like dictionary definition would be inappropriate. However, we presented evidence at the district court level to the extent it was going to take judicial notice of World Health Organization definitions that the definitions do not overlap. The definitions employed by the World Health Organization for pandemic and epidemic do not overlap. In fact, in order for a pandemic to occur, well, you can look at it. We included it in footnotes in our response in opposition to the motion to dismiss. But those definitions don't even employ the same terms. All right. Thank you for your argument. Thank you. All right, Mr. Antonelli, you may proceed. Thank you. May it please the court. My name is Matt Antonelli. I'm here today on behalf of Applebee's AGA Service Company and Jefferson Service Company. Now, as the panel knows, this matters before you today following the district court's dismissal of Logan Bauer's complaint. The district court correctly found that Bauer failed to state a claim based on a straightforward application of the language of the travel insurance policies at issue. Now, Bauer's claim was denied because of the policy's epidemic exclusion, which provides there's no coverage for any loss resulting directly or indirectly from an epidemic. Bauer here alleges that his travel was canceled as a result of governmental stay-at-home orders, which were issued as a direct result of COVID-19 and to prevent the spread of the disease. So there can be no reasonable dispute here that COVID-19 both is indeed an epidemic and was the cause of Bauer's travel. Well, counsel, let me ask you about the second part of that assertion. Don't we have to take into account Missouri's concurrent proximate cause rule and doesn't that affect how we read the terms directly and indirectly? Otherwise, there would be no limit. It does impact your analysis of those issues, Your Honor. However, I don't think the anti-concurrent clause rule is indicated by our facts here. And the reason being that the cases applying that doctrine require that the insured identify two independent and distinct causes of loss. And something that opposing counsel mentioned here was that. Well, arguably, the independent and distinct cause of loss is the governmental reaction, not the pandemic. How do we distinguish? And this goes back to my earlier question. How do we assess what is truly an independent and distinct cause? Well, here, Your Honor, when you look at the actual governmental orders, which Mr. Bauer refers to, and one of these was attached as one of the exhibits to our original motion to dismiss in the district court, they make express reference to, in fact, WHO's declaration of COVID-19 as a pandemic. So there are not there two separate independent and distinct causes of loss. So the cases that. Well, counsel, let me put it to you this way. Let's suppose that a flight is canceled because the pilot has COVID. Now let's suppose in a different scenario the flight is canceled because the pilots are calling in sick in protest of a mandatory vaccination scheme. Would the latter one be covered here or would it be excluded? And if so, how do we differentiate that from what happened here? Well, so. So in one case, the pilots got COVID, the flight is canceled. In the other case, there's nothing wrong with the pilots, but they're mad about a vaccination mandate so they don't show up to work and the flight is canceled. So, Your Honor, fortunately, I'm not aware of us ever receiving a claim with that specific factual setup. I will say here it comes down to what is and is not a covered cause of loss under the policy. And again, the insured needs to point to what is a covered cause of loss and is that covered cause of loss subject to an exclusion or not. Under Missouri law, they have to be truly independent and distinct. They do, Your Honor. So how do we how do we assess my first example from the second example? Well, so. So I know, Your Honor, in some of the cases that have discussed these issues. For example, there's a case and we didn't specifically address this in our briefing, something that was raised in the reply brief, some of the case law that they cited. But there's a case, Gateway Hotel Holdings, Inc. It's a Missouri Court of Appeals decision in 2008. And in that case, there was an issue about a boxing event that was held at a hotel. And there was a athletic activity exclusion in the policy. It was a commercial general liability policy in that case, Your Honor. And the insured argued, well, the loss was my failure to provide medical personnel at this event. It wasn't the actual athletic activity itself. And what the court said when it looked at it was, well, no, these are not independent and distinct causes of loss. They're incidental to one another. So, again, here, I think. What jurisdiction was that? I'm sorry, Your Honor? What jurisdiction was that? That was a Missouri Court of Appeals decision in 2008, applying Missouri's anti-concurrent clause rule. So here, when we look at the governmental stay-at-home orders, I think the question the panel has to ask itself, and it's the same question that the district court addressed, would this governmental order have issued but for COVID-19, but for the epidemic? The answer is plainly no. So I disagree with counsel's assertion that this doctrine is even implicated by the facts here. Because they are unable to point to two separate causes of action. One way that we think about this, Your Honor, sometimes in the duty-to-defend context. Now, this is not a duty-to-defend case. That's not what we're dealing with. But in the duty-to-defend context, oftentimes you might have some allegations that fall within exclusion, might not give rise to coverage, and some allegations that do. But, again, that recognizes that those are separate, independent, and distinct issues. So here, there's no separate, independent, and distinct covered cause of loss. So one thing that I heard for the first time today that I did want to address briefly was this issue about some allegation that policy language has been added subsequent to this claim coming in or this lawsuit. That evidence is not in the record before the Court. We don't have a record that has established what policy drafting may or may not have occurred. And, frankly, I don't think any of that is relevant to the panel's analysis here. We'd be happy to brief that issue further if it would be helpful to the Court. But I know there are courts in other jurisdictions that have held that subsequent policy changes, policy drafting, don't impact whether a claim was or wasn't covered at the time. That's a straight question of contract. But turning to what the WHO actually did here and the evidence that we have put forth regarding the recognition of an epidemic, I think the timeline is very telling. So, as we noted to the District Court below and then again in our briefing here, as early as January 24, 2020, the World Health Organization included COVID-19 on their list of epidemic or pandemic epidemic diseases. And we submitted that evidence to the District Court. The District Court considered that in issuing its decision. Subsequent to that, on February 4, this is the press conference that Council refers to as a single employee. The suggestion is it's a single, you know, rogue employee out making off-the-cuff remarks. The remarks that he's referring to were made by Dr. Sylvie Briand, who's the head of the WHO's Global Infectious Hazard Preparedness Division. And we have provided, both below and again in our briefing to the Court, references to myriad news articles quoting what Dr. Briand said. We provided a video link, lest there be any doubt that she referred to COVID-19 as an epidemic with multiple foci. And then following up on that, and one further point on that, the significance of those comments was that at the time, she was addressing whether or not WHO had recognized COVID as a pandemic. And she said, well, not quite yet. Right now, it's an epidemic with multiple foci. It continues to spread, then it may be a pandemic, which is an epidemic on a larger scale. So next, on March 11, that's when the Director General of the WHO comes out and leaves no doubt and says, we have made the assessment that COVID-19 can be characterized as a pandemic. And his comments were further significant because he referred to COVID as an epidemic several times in that press release. That was included as one of the exhibits to our briefing below. It was submitted to this panel as well. And he refers to the epidemics that had been tearing through, at that point, China, the Republic of Korea, Iran, and Italy. At that time, those were the epicenters of the epidemic. And what he says is, this has now grown to a global scale, now a pandemic. And it was entirely appropriate for the district court to view those quotes and take judicial notice, both of the fact that the WHO had recognized this as a pandemic, and also that that recognition of a pandemic was sufficient to satisfy the definition of epidemic policies. So with that, Your Honors, and for all the reasons stated in our brief, we would ask that you affirm the lower court's decision and find that no coverage is owed for Mr. Bauer's claim. Thank you very much for your time. Thank you. Well, I think your time has expired, but we'll add one minute, unless you think you've covered it, we can submit the case. Your Honor, I was going to ask if I had time left. If the court has any additional questions, I'd be happy to answer them. We'll give you one minute and see if there are any questions. Go ahead. Okay, thank you. If you wish, if you wish to speak, you may. No, I think that's, I mean, I think that I'll answer it. I'm happy to answer any questions that you have. I do want to go back and just briefly address, Judge Grossman, the issue that you seem very interested in and concerned with, and that is the proximate cause rule. I think that, again, to answer your question about how you determine, you know, Missouri law is very clear that a remote cause as opposed to a direct and proximate cause, you will always look at the more direct, the less remote of the two. And in this particular case, the allegations that Mr. Bauer has made is that the direct cause of his loss was the government mandate. Had it just been for COVID-19, he would not have canceled his trip. He wasn't concerned about that. But it was the government mandate. That's what caused him to cancel his trip, because he couldn't leave his house, because it wasn't essential travel. And so the answer to your question is you have to look at remoteness. What was the immediate cause? What was the most remote cause? What was the most direct cause for his loss? All right. Thank you to both counsel. The case is submitted. The court will file a decision in due course.